# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KISKA CONSTRUCTION
CORPORATION - U.S.A. and KAJIMA
ENGINEERING AND CONSTRUCTION,
INC., a Joint Venture,

    Plaintiff,

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 09–817 (CKK)

## MEMORANDUM OPINION
(September 9, 2010)

This action is brought by Plaintiff Kiska Construction Corporation - U.S.A. and Kajima

Engineering and Construction Inc., a Joint Venture ("Kiska") for review of an administrative

determination issued by the Armed Services Board of Contract Appeals ("ASBCA") relating to a

contract dispute between Kiska and Defendant Washington Metropolitan Area Transit Authority

("WMATA").  On February 19, 2009, the ASBCA rendered a decision granting in part and

denying in part Kiska's contract appeals, and Kiska now seeks confirmation in part and reversal

in part of the ASBCA's decision.  Kiska has filed a [12] Motion for Summary Judgment, and

WMATA has filed a [14] Cross-Motion for Summary Judgment.  The motions have been fully

briefed and are now ripe for decision.  Based on the parties' briefs, the administrative record, the

relevant authorities, and the case as a whole, the Court shall GRANT-IN-PART and DENY-IN-

PART the parties' motions for summary judgment.  For the reasons explained below, the Court

shall affirm the ASBCA's decision with respect to all of the issues contested by the parties.

# I. BACKGROUND

*A.     The Contract and the First Federal Action*

On February 25, 1994, the Washington Metropolitan Area Transit Authority ("WMATA") awarded Contract No. 1E0023 (the "Contract") to Kiska Construction Corp. USA and Kajima Engineering and Construction, Inc., a Joint Venture ("Kiska") for the construction of twin single-track earth tunnels, an access shaft, fan shaft, vent shaft, and related work as part of the Metrorail system.  Pl.'s Stmt.[1] ¶ 1.  During performance of the Contract, there were a number of disputes about various terms of the Contract and the performance required.  *Id.* ¶ 2.

On November 10, 1997, Kiska filed a lawsuit against WMATA in this Court.  *See* J.A. vol. 3, tab 10 (Complaint, *KiSKA Constr. Corp.-U.S.A. v. Wash. Metro. Area Transit Auth.*, Civ. No. 97-2677 (D.D.C. filed Nov. 10, 1997)).  In that lawsuit, Kiska alleged that WMATA had made material misrepresentations regarding what would be required for the Contract and that WMATA had failed to perform its obligations as promised.  Kiska asserted claims for (1) fraudulent misrepresentation, (2) negligent misrepresentation, (3) *quantum meruit*, (4) unilateral mistake, and (5) material breach of contract.  *See id.*; Pl.'s Stmt. ¶ 2.  This Court dismissed the first two causes of action, granted summary judgment for WMATA on the *quantum meruit*

---

[1] The Court strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1) when resolving motions for summary judgment.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case).  The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [4] Order at 1 (May 5, 2009).  Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party, in which case the Court may cite a party's Response to the Statement of Material Facts ("Resp. Stmt.").  The Court shall also cite directly to evidence in the record, where appropriate.

claim, and allowed the last two causes of action to be tried by a jury.  Pl.'s Stmt. ¶ 2.

The complaint in the First Federal Action included a number of allegations that the parties believe are material to the claims before the ASBCA.  For example, in Count IV of the complaint, for "Material Breach of Contract," Kiska alleged as follows:

248.  WMATA materially breached the Contract, including express and implied warranties, in at least the following ways:

a.  WMATA failed to disclose necessary and vital information to KiSKA-Kajima relating to the performance and safety of the work to be performed;

b.  The Contract plans and specifications and directed construction methods prepared by WMATA were defective, misleading, incomplete and unfit for their intended purpose;

c.  WMATA breached its duty to cooperate with KiSKA-Kajima and not hinder or interfere with KiSKA-Kajima's performance;

d.  WMATA failed and refused to grant time for extensions for excusable and/or compensable delays encountered by KiSKA-Kajima;

e.  WMATA directed that extra work beyond the scope of the Contract be performed and has failed and/or refused to pay for such extra work;

f.  WMATA failed and refused to administer the Contract in accordance with its terms and with good faith and fair dealing;

g.  WMATA failed to coordinate the Project with the numerous Washington, D.C. utility companies and permit-granting agencies;

h.  WMATA failed to coordinate the work of its other contractors, including Blake Construction;

i.  WMATA failed to obtain necessary permits for construction in a timely manner;

j.  WMATA failed and refused to review and approve shop drawings in a timely manner;

k.      WMATA failed to provide timely and complete access to the jobsite;

l.      WMATA directed the acceleration of the work without compensating KiSKA-Kajima;

m.      WMATA arbitrarily and unreasonably directed pervasive changes to the Contract which constituted a cardinal change.

AR, vol. 3, tab 10 (Complaint) ¶ 248.  Although subparagraph (e) referenced "extra work beyond the scope of the Contract," Kiska's complaint did not identify the alleged extra work to which it was referring.  Kiska also alleged the following: "Despite repeated requests by KiSKA-Kajima throughout Contract performance for change orders and appropriate time extensions to compensate KiSKA-Kajima for the additional costs and delays to the Project schedule caused by WMATA, WMATA continuously refused to accept responsibility for its numerous acts and omissions."  *Id.* ¶ 185.  Kiska did not specifically allege in its complaint that WMATA wrongfully withheld the balance of the contract price or that it had breached the contract by failing to pay the contract retainage.  *See generally id.*; Pl.'s Stmt. ¶ 3.

During the trial, the Court allowed Kiska to present evidence of damages based on the "modified total cost" method, which calculates the amount of damages as the total actual costs incurred the contractor (Kiska) in performing the contract minus the contractor's bid price, adjusted to account for the costs of harms for which the contractor is itself responsible.  *See* AR, vol. 3, tab 28 (Mem. Op. Nov. 1, 2000); Def.'s Stmt. ¶ 5.  One of Kiska's experts, Mr. Kelley, testified at the trial that Kiska's damages had to be calculated using the modified total cost method because, in his opinion, the breaches involved in the litigation were so complex and "inextricably intertwined" that there was no other method available to compute damages.  AR, vol. 3, tab 23 (Trial Tr.) at 2258-64.  Mr. Kelley testified that in his calculations, he subtracted

amounts for contract modifications paid by WMATA. *See id.* at 2421. Another of Kiska's

experts, Mr. Jeffrey E. Fuchs, also testified about the modified total cost method of calculating

damages. In his calculation of damages, Mr. Fuchs added $650,000 retainage, explaining it as

"monies that have been earned by the contractor during the course of its work that the owner

withholds and gives back at the end of the project." *Id.* at 2609. Mr. Fuchs testified that the

retainage was an "accounting adjustment that occurs at the end of any job" and testified that there

was no dispute that WMATA owed that amount for work already performed by Kiska. *Id.* at

2640-41. Based on this testimony, Kiska's counsel argued during closing arguments that the jury

should award damages based on the modified total cost method, including the amount for

retainage withheld by WMATA. *Id.* at 4666-69.

The Court instructed the jury that it could award damages to Kiska using the modified

total cost method if the jury found that it was impossible or impracticable for Kiska to calculate

specific damages resulting from each separate impact or delay for which WMATA was

responsible. *Id.* at 4592. The Court instructed the jury to reduce its award by any amounts which

WMATA had shown were unreasonable or were the responsibility of Kiska. *Id.* The Court

provided no instructions regarding a claim for the wrongful withholding of retainage or

WMATA's failure to pay certain equitable adjustments. Pl.'s Stmt. ¶ 5. The Court also gave the

following general instruction regarding Kiska's two causes of action:

> In its Complaint, the Plaintiff, KiSKA-Kajima, has filed two causes of action
> or claims against the Defendant, Metro [WMATA]:
>
> (1)     First, KiSKA-Kajima claims that Metro materially breached the contract by,
> among other things, failing to provide design plans and specifications that were
> accurate, complete and fit for their intended purpose, failing to disclose vital
> information that Metro possessed regarding the adequacy of its Contract plans and

specifications, and failing to cooperate and not interfere with KiSKA-Kajima and otherwise act in good faith in its administration of the Contract.

(2)    Second, KiSKA-Kajima claims that it entered into the contract with Metro on the basis of a unilateral mistake regarding the adequacy of Metro's plans and specifications and the ability to safely and efficiently perform the work as required in the Contract.

AR, vol. 3, tab 12 (Instruction No. 33).  With respect to the breach of contract claim, the Court

instructed the jury as follows:

> There is agreement between the parties that a valid and enforceable contract existed pursuant to which KiSKA-Kajima agreed to perform the construction work necessary to complete the 14th Street Tunnels for the agreed price of $42,920,000.00. KiSKA-Kajima claims that Metro [WMATA] materially breached the Contract in a number of ways that I will explain to you in separate instructions.
>
> Under the law, if one party, without legal excuse fails to fully perform a duty owed under a contract, then that party has breached the contract.
>
> If you find, by a preponderance of the evidence, that Metro breached any of its contractual duties that I describe to you related to KiSKA-Kajima's claims that Metro failed to provide design plans and specifications that were accurate, complete and fit for their intended purpose or that Metro failed to disclose vital information, then you must return a verdict in favor of KiSKA-Kajima on its breach of contract claim.
>
> Or, if you find, by clear and convincing evidence, that Metro acted in bad faith in the administration of the Contract or that Metro failed to cooperate with or prevented, hindered or interfered with KiSKA-Kajima's performance of the Contract, then you must return a verdict in favor of KiSKA-Kajima on its breach of contract claim.

*Id.* (Instruction No. 40).  With respect to the claim for breach of duty of good faith and fair

dealing, the Court instructed the jury as follows:

> A party to a contract acts in good faith if the party's conduct is faithful to the common purpose of the contract and is consistent with the justified expectations of the other party to the contract.  It is impossible to list every act that violates the duty of good faith and fair dealing, however, it is generally accepted that a party to a contract breaches its duty of good faith if it:
>
> 1) does not uphold the spirit of the contract,
> 2) does not exercise diligence in performing its contractual obligations,
> 3) interferes with the other party's contract performance, OR

4) fails to cooperate with the other party during the performance of the contract.

A party to a contract must perform his or her obligations in good faith even if the contract does not provide for such a duty in writing. To find that Metro did not act in good faith requires a finding, by clear and convincing evidence, that Metro acted with specific intent to injure KiSKA-Kajima, or that Metro took actions which were motivated by malice or ill-will towards KiSKA-Kajima, or that Metro took actions that were designedly or intentionally oppressive to KiSKA-Kajima.

*Id.* (Instruction No. 50).

The jury found that there was no unilateral mistake and no material breach of contract in a general verdict with no further explanation. Pl.'s Stmt. ¶ 6. The Court entered judgment on the verdicts for WMATA and denied Kiska's motion for a new trial; the judgment was affirmed on appeal. *Id.* ¶ 7.

B.    *Kiska's Appeals to the ASBCA*

Following the trial, Kiska continued to have disputes with WMATA. After WMATA denied Kiska's claims for relief, Kiska appealed WMATA's denials to the Armed Services Board of Contract Appeals ("ASBCA" or the "Board").[2] Pl.'s Stmt. ¶ 8. Prior to filing an answer to Kiska's Complaint before the ASBCA, WMATA filed an action in this Court seeking a judgment declaring Kiska's ASBCA claims barred by the doctrines of *res judicata* and/or collateral estoppel. *Id.* ¶ 9; *see Wash. Metro. Area Transit Auth. v. Kiska Constr. Corp.-U.S.A.*, No. 04-1209 (D.D.C. filed July 16, 2004). The ASBCA denied WMATA's request to suspend Kiska's appeals pending this Court's resolution of the declaratory judgment action, and this Court ultimately stayed the declaratory judgment action pending a decision by the ASBCA. Pl.'s Stmt.

_____

[2] As explained *infra* in section II of this opinion, the Contract provides that disputes shall be resolved in the first instance by the ASBCA.

¶ 9.  WMATA moved the Board to dismiss Kiska's appeals, or, in the alternative, for summary judgment, based on the grounds of *res judicata* and/or collateral estoppel.  *Id.* ¶ 10.  The ASBCA denied WMATA's motion.  *Id.*

Kiska's Complaint before the ASBCA alleged that WMATA failed to pay: (1) $650,000 retainage owed to Kiska after completion of the Contract; (2) $6042 for work directed by Contract Modification No. 33; (3) $6994 for work directed by Contract Modification No. 49; (4) $131,825.64 for work performed by Kiska under Pending Change Order ("PCO")[3] No. 34 relating to barrier modifications at the fan shaft; (5) $192,005.10 for streetcar track quantity overruns under PCO No. 45; (6) $247,392 for a temporary tunnel safety walk under PCO No. 56; and (7) $11,759 for grouting weep holes in the tunnel and additional pedestrian railings under PCO No. 60.  *See* J.A. vol. 1 (ASBCA Opinion by Administrative Judge Jack Delman) (hereinafter, "ASBCA Opinion") at 10 (Findings of Fact ("FF") ¶ 16).  The ASBCA eventually held hearings on the merits of these claims.  Pl.'s Stmt. ¶ 11.

C.       *The ASBCA's Opinion*

The ASBCA issued its Opinion on February 19, 2009, granting in part and denying in part Kiska's appeals.  Pl.'s Stmt. ¶ 14.  The Board found that it had jurisdiction over the matter pursuant to the Contract.  *Id.* ¶ 12; ASBCA Opinion at 26.  The Court shall summarize the ASBCA's rulings with respect to the issues that are contested in this case.

1.       <u>*Res Judicata* and Collateral Estoppel</u>

The Board reaffirmed its prior rulings denying WMATA's motion to dismiss the appeals

---

[3] According to the ASBCA Administrative Law Judge, a PCO was the device used by WMATA to describe what it considered to be changed work and to seek the contractor's proposal for price and/or time to perform it.  *See* ASBCA Opinion at 14 (FF ¶ 31).

under the doctrines of *res judicata* and collateral estoppel. ASBCA Opinion at 27-29. With respect to the defense of *res judicata*, the Board held this case is governed by the unique contract disputes framework that existed prior to the enactment of the Contract Disputes Act, 41 U.S.C. §§ 601-13, wherein a contractor's various claims under the same contract were required to be brought in different forums—breach of contract claims brought before a court and requests for equitable adjustment handled administratively before a board of contract appeals. *Id.* at 27. Therefore, the ASBCA held that the adjudication of breach of contract claims in the First Federal Action did not bar Kiska's requests for equitable adjustment before the ASBCA. *Id.*

With respect to the affirmative defense of collateral estoppel, the Board applied the standard that a party is collaterally estopped from raising an issue that was actually litigated and determined by a valid, final judgment where the determination was essential to that judgment. ASBCA Opinion at 27-28. The Board determined that WMATA had failed to prove that the matter of retainage was actually litigated in the First Federal Action. *Id.* at 28. The Board noted that the retainage claim was not included in Kiska's complaint in the First Federal Action, and the Board also noted that during the trial, Kiska's damages expert, Jeffrey E. Fuchs, testified that the matter of retainage was not disputed by the parties. *Id.* at 4 (FF ¶ 8), 28. Although the Board acknowledged that Kiska presented evidence at trial seeking payment of the retainage, the Board found that the record was unclear as to what position WMATA took with respect to the issue. *Id.*

The Board also found that even assuming *arguendo* that the issue of retainage was actually contested and litigated in the First Federal Action, WMATA failed to show that the issue was actually determined by the jury or was necessary to the final judgment. *Id.* at 28-29. The Board found that although Kiska's counsel asked for retainage to be awarded during closing

arguments, there was no jury instruction that addressed a contractor claim for retainage or the balance of the contract price. *Id.* at 28. The Board found that the matter of retainage was not expressly or impliedly addressed in any of the instructions given to the jury, and therefore the Board could not conclude that the jury's general verdicts necessarily decided the issue. *Id.* The Board held that even if the retainage claim could be considered to have fallen under Kiska's claim for breach of contract as a breach of the duty of good faith and fair dealing, the jury was instructed that clear and convincing evidence was necessary to find WMATA liable for breach. *Id.* at 6-7 (FF ¶ 11), 29. The Board thus concluded that the jury could have believed that WMATA was responsible for paying the retainage but that there was not clear and convincing evidence of malice or ill will toward Kiska. *Id.* at 29. Therefore, the Board ruled that the jury's general verdict of non-liability on breach of contract did not necessarily include a determination that WMATA was not liable for the retainage. Accordingly, the Board rejected WMATA's defense of collateral estoppel as to the retainage claim.

The Board also rejected WMATA's argument that collateral estoppel barred the other claims contested by Kiska's appeals. ASBCA Opinion at 30. The Board found that WMATA had failed to show that these claims were included in the complaint in the First Federal Action or that the parties presented any evidence as to these claims. *Id.* The Board found that Kiska's damages expert had claimed damages using a modified total cost approach, seeking all contract costs less adjustments not relevant here, plus overhead, profit, bond premium, interest, and lost profit. *Id.* at 4 (FF ¶ 7). However, the Board ruled that this did not constitute the actual litigation of Kiska's claims for equitable adjustment. *Id.* at 30. The Board found that the claims for adjustment were not included in any of the instructions given to the jury and that WMATA had

failed to show that these issues were necessary to the jury's general verdicts. *Id.* Accordingly, the Board rejected WMATA's affirmative defense of collateral estoppel based on the First Federal Action.

2.    Retainage Claim

The Board ruled in favor of WMATA on Kiska's claim for retainage. ASBCA Opinion at 29. The Board found that under the Payments to Contractor article of the Contract, Kiska had the right to the full amount due under the Contract based on the completion and the acceptance of all contract work and upon the presentation of a properly executed voucher seeking such payment to WMATA. *Id.* at 24 (FF ¶ 56), 29; *see* AR, vol. 4, tab 9 (Construction Contract 1E0023) at 6-7 ("Upon completion and acceptance of all work, the amount due the Contractor under this Contract shall be paid upon the presentation of a properly executed voucher . . . .") The Board concluded that Kiska had failed to show that it fully completed the contract work or that WMATA finally accepted the contract work as completed or agreed to something less than full performance. ASBCA Opinion at 29. The Board also found that Kiska had failed to show it submitted a properly executed voucher for final payment. *Id.*

The Board found that substantial completion of the project occurred on May 22, 1997. Pl.'s Stmt. ¶ 34. During the hearing, WMATA offered into evidence Certificate No. 003, entitled "Substantial Completion." ASBCA Opinion at 11 (FF ¶ 20). The "Description of Work Being Accepted" was specified in detail in the certificate as follows:

(a)    This facility or the integral parts of this facility noted above has been completed according to the contract documents and all modification as of <u>May 22, 1997</u> (Date).
(b)    *All remaining work is noted on the punch list attached.*
(c)    All documents submitted are in proper order and all items not submitted are

<div style="margin-left: 3em;">

listed on attachment B.

(d)     I recommend release of all but $ <u>650,000</u>     in retainage, which the dollar amount stated is not less than the minimum required to be retained by the contract.

(e)     The current status of all unresolved contract issues is indicated on the attached contract status sheet (applies only to final certificates).

</div>

*Id.* at 11-12 (FF ¶ 20) (emphasis added); AR vol. 5 (Certificate No. 003).  The attachments to this certificate included the punch list, change order requests, and a document transfer letter, but no contract status sheet was attached as would apply if the certificate was for final completion. ASBCA Opinion at 12 (FF ¶ 20); AR vol. 5 (Certificate No. 003).  The middle section of the certificate, which was signed by Kiska's project manager, Steven Price, on October 9, 1997, states that Kiska agrees to complete the punch list by October 20, 1997.  ASBCA Opinion at 12 (FF ¶ 21); AR vol. 5 (Certificate No. 003).  Mr. Price left the project in early 1998.  *See* AR, vol. 6 (ASBCA Tr. vol. 1) at 75.

The Board found that Kiska did not complete the punch list by October 20, 1997. ASBCA Opinion at 12 (FF ¶ 22).  The Board found that the parties continued to discuss the status of punch list work during contract closeout meetings on December 17, 1997, January 22, 1998, and April 30, 1998.  *Id.*  During the hearing before the ASBCA, Mr. Price testified that *most* of the punch list work was completed by Kiska but that some items could not be completed and that negotiations to remove those items from the punch list stopped.  *Id.* at 13 (FF ¶ 23).  The Board found that Kiska did not establish the amount or value of punch list work that remained to be accomplished, nor did it show that the Contracting Officer waived completion of the balance of the contract work or backcharged Kiska for the same.  *Id.*

The Board also found that there was no certificate evidencing final completion in the

record, relying on testimony from WMATA's Resident Engineer that such a certificate would be marked "FINAL." ASBCA Opinion at 14 (FF ¶¶ 26-27). The Board found that WMATA processed Progress Payment No. 39 on or about July 30, 1998, in the amount of $330,380.92 for work performed through June 23, 1998. *Id.* (FF ¶ 28). The Board found that there was no evidence that all of the contract work had been completed as of this date. *Id.*

3.     Removal of Streetcar Tracks (PCO No. 45)

The Board ruled in favor of Kiska's claim for an equitable adjustment for the removal of streetcar tracks pursuant to PCO No. 45. The Board found that as part of the base work under the Contract, Kiska was required to remove streetcar tracks from the project site. ASBCA Opinion at 15 (FF ¶ 32). The Board found that WMATA had estimated that the quantity of streetcar tracks to be removed would be 1860 linear feet, to be removed at a unit price of $63 per linear foot, for an estimated total of $117,180. *Id.*; AR, vol. 3, tab 21 (Unit Price Schedule). The Board found that it was undisputed that the amount of track removed by Kiska exceeded the amount estimated by WMATA in its schedule. ASBCA Opinion at 15 (FF ¶ 34). Article 53 of the Contract, "Variations in Estimated Quantities," provides in pertinent part as follows:

> a.     Where the quantity of a pay item in this Contract is an estimated quantity and where the actual quantity of such pay item varies more than 15 percent above or below the estimated quantity stated in this Contract, an equitable adjustment in the Contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity. . . .

AR, vol. 2, tab 9 (Contract) at GP-35.

The Board found that "[i]t appears that WMATA used the designation PCO No. 45 as the vehicle to pay [Kiska] for the track removal that exceeded the contract estimate." ASBCA

13

Opinion at 15-16 (FF ¶ 34). The Board found that there was a discussion of PCO No. 45 during an internal briefing of the Contracting Officer on July 23, 1997. *Id.* at 16 (FF ¶ 35). The Board found that the minutes from that meeting indicate that the estimated quantity for track removal in the Contract schedule was inaccurate and may have been a typographical error, and that "Funding action" and "Modification" were to be prepared by WMATA to pay Kiska for the quantity overrun based on the unit price in the bid schedule. *Id.* The minutes from that meeting, which are in the administrative record, indicate that the actual quantity removed was 4351 linear feet. *See* AR, tab 4 (Minutes of 7/23/1997 Closeout Meeting) at WM 015666.

The Board found that the parties continued to negotiate payment for PCO No. 45 during the project closeout meetings on November 19, 1997, and April 30, 1998. ASBCA Opinion at 16 (FF ¶ 36). The Board found that on or about May 14, 1998, the parties executed an "Agreement of Final Quantity" in the amount of 4907.7 linear feet. *Id.* at 16 (FF ¶ 37). The agreement was signed on behalf of WMATA by its resident engineer, Mr. Patrick Cummings. *Id.* The Board found that WMATA's resident engineer was assigned by the Contracting Officer to inspect the work under the contract and to certify the quantities of work performed for progress payment purposes. *Id.*; *see* AR, vol. 2, tab 9 (5/4/1994 Letter from F.X. Watson, WMATA Contracting Officer, to Patrick Yerdon, WMATA Resident Engineer). The Board found that Mr. Cummings was authorized to execute this document for purposes of determining the amount of track actually removed by Kiska. ASBCA Opinion at 16 (FF ¶ 37). The Board also found that it was undisputed that Kiska was never paid for its removal of streetcar tracks in excess of the quantity estimated in the Contract. *Id.*

Based on these findings, the Board concluded that Kiska was entitled to an equitable

adjustment under PCO No. 45 for having removed more than 115% of the Contract's estimated quantity of streetcar tracks. Pl.'s Stmt. ¶ 51. The Board found that Kiska had removed 4907.7 linear feet of streetcar tracks, compared to 1860 linear feet estimated quantity provided in the bid documents. *Id.* Accordingly, the Board awarded an equitable adjustment of $192,005.10 based on a unit price of $63.00 per linear foot contained in the bid schedule. *Id.*

4.  Tunnel Safety Walk (PCO No. 56)

The Board rejected Kiska's claim for an equitable adjustment for the construction of a tunnel safety walk. The Board found that under the Contract, Kiska was required to comply with "OSHA [Occupational Safety and Health Administration] provisions pertaining to the safe performance of the work." ASBCA Opinion at 17 (FF ¶ 39). The Board identified the relevant OSHA provisions as 29 C.F.R. § 1926.800(b):

(1)  The employer shall provide and maintain safe means of access and egress to all work stations.

(2)  The employer shall provide access and egress in such a manner that employees are protected from being struck by excavators, haulage machines, trains and other mobile equipment.

*Id.* In June 1995, WMATA issued a stop work order because Kiska had not installed a temporary walkway rail for tunnel access and egress for its employees. Pl.'s Stmt. ¶ 16. Kiska disputed WMATA's contention that a temporary tunnel rail walkway was required by OSHA regulations and, by letter dated June 8, 1995, Kiska requested a change order to do this work. *Id.* ¶ 17; ASBCA Opinion at 17 (FF ¶ 40). Kiska contended that it had complied with OSHA requirements by constructing a "flat invert" in the tunnel that provided safe access for its employees. Pl.'s Stmt. ¶ 17; ASBCA Opinion at 17 (FF ¶ 40).

WMATA disputed Kiska's position, and the matter of responsibility for the temporary

15

tunnel walkway railing was debated for many months.  Pl.'s Stmt. ¶¶ 18-19; ASBCA Opinion at 17 (FF ¶¶ 41-42).  Eventually, Kiska agreed to construct the temporary tunnel walkway railing, and the stop work order was lifted.  Pl.'s Stmt. ¶ 20; ASBCA Opinion at 17 (FF ¶ 42).  Kiska filed for an equitable adjustment for the work, designating its claim as Contract Proposal Number 124 and seeking compensation in the amount of $247,392.  Pl.'s Stmt. ¶ 20.

During the hearing, witnesses testified that when a claim or a Contract Proposal Number was acknowledged by WMATA as a payable extra, WMATA would issue a pending change order ("PCO").  Pl.'s Stmt. ¶ 21.  Witnesses also testified that once the parties reached agreement following a negotiation over any increased payment and time extension for a PCO, WMATA would issue a contract modification.  *Id.* ¶ 22.  However, the record before the ASBCA did not contain a PCO or contract modification for the tunnel walkway railing.  Defs.' Stmt. ¶¶ 21-22.

The Board found that on July 23, 1997, WMATA conducted a meeting identified as "E2c Closeout, Contracting Officer's Briefing."  *See* ASBCA Opinion at 17 (FF ¶ 43).  The minutes of that meeting, which are part of the administrative record, state in pertinent part as follows: "PCOs to be issued: CPN 124 - Tunnel Safety Walk: Issue is similar to E4b claim settled around $50,000."  AR, vol. 4, Ex. A-8 (7/23/2007 Meeting Minutes) at WM 015667.  The Board found that these minutes indicated that WMATA was to issue a PCO on the tunnel walkway.  ASBCA Opinion at 17 (FF ¶ 43).  On November 19, 1997, the parties held a closeout meeting.  *Id.*  A document entitled "Agenda Items" for that meeting includes "PCO No. 45 - Temporary Tunnel Safety Walk - PROC Action" under the heading "Status of Change Order Negotiations & Contract MODs."  *Id.* at 18 (FF ¶ 43); AR, vol. 3, tab 18 (12/17/1997 Agenda Items).  The minutes of that meeting also state under a similar heading "PCO-056; WMATA action to review

proposal and set up negotiations. PROC action." ASBCA Opinion at 17-18 (FF ¶ 43); AR, vol. 3, tab 17 (12/19/1997 meeting minutes). A WMATA document entitled "Agenda Items" for a closeout meeting on April 30, 1998, also refers to "PCO 56 - Temporary Tunnel Safety Walk - PROC Action/Neg. Required" under the heading "Status of Change Order Negotiations & Contract MODs." ASBCA Opinion at 18 (FF ¶ 43); AR, vol. 3., tab 19 (4/30/1998 Agenda Items).

During the hearing before the Board, Kiska's project coordinator, Mr. Ulgur Aydin, testified that the parties entered negotiations on PCO No. 56 and that WMATA made an offer to Kiska of $77,000, which Kiska did not accept. *See* AR, vol. 6 (ASBCA Tr. vol. 2) at 42-43. The Board found that Mr. Aydin's testimony indicated that no agreement was ever reached regarding PCO No. 56. *See* ASBCA Opinion at 18 (FF ¶ 43). WMATA's resident engineer also testified during the hearing that the tunnel walkway was required by the Contract and OSHA regulations. *See* AR, vol. 6 (ASBCA Tr. vol. 2) at 67-69. The Board found that Kiska's witnesses did not address how Kiska's plans would have complied with OSHA regulations without the tunnel safety walk. ASBCA Opinion at 18 (FF ¶ 44).

The Board found that Kiska failed to meet its burden to show by a preponderance of the evidence that its performance provided safe means of access and egress as required by the Contract and OSHA regulations and therefore that WMATA had directed it to perform additional work. ASBCA Opinion at 31. The Board found that WMATA's issuance of PCO No. 56 was not a binding contract modification, and therefore it did not dispose of Kiska's burden of proof. *Id.* Accordingly, the Board denied Kiska's claim for an equitable adjustment for the tunnel safety walk.

### 5.  Grouting Weep Holes and Additional Pedestrian Railings (PCO No. 60)

The ASBCA found that Kiska failed to prove that it was entitled to an equitable adjustment for work relating to PCO No. 60.  *See* ASBCA Opinion at 31.  Kiska is not appealing this decision.[4]

### 6.  Barrier Modification Around Fan Shaft (PCO No. 34)

The ASBCA found that Kiska was directed to perform a modification around the fan shaft and that the evidence presented supported Kiska's claim under PCO No. 34 for an equitable adjustment in the sum of $115,807.  Pl.'s Stmt. ¶ 50.  WMATA does not challenge the ASBCA's findings as to Kiska's entitlement to an equitable adjustment for PCO No. 34 or as to the amount awarded.  Def.'s Resp. Stmt. ¶ 50.

### 7.  Contract Modification No. 49

The ASBCA found that WMATA had properly issued a unilateral change order No. 49 for the water connection to the senior citizens' complex and that the work had been performed, entitling Kiska to an equitable adjustment in the amount of $6994.  Pl.'s Stmt. ¶ 48.  WMATA does not challenge the ASBCA's findings as to Kiska's entitlement to an equitable adjustment for this modification or as to the amount awarded.  Def.'s Resp. Stmt. ¶ 48.

### 8.  Contract Modification No. 33

The ASBCA found that both parties had agreed to Modification No. 33 for an equitable adjustment in the sum of $6042 and that Kiska was entitled to be paid that amount pursuant to the Contract's "Changes" provision.  Pl.'s Stmt. ¶ 49.  WMATA does not challenge the

---

[4] Because Kiska has not contested this finding by the Board, the Court shall grant WMATA's Cross Motion for Summary Judgment with respect to the Board's denial of these claims.

ASBCA's findings as to Kiska's entitlement to an equitable adjustment for this modification or as to the amount awarded.  Def.'s Resp. Stmt. ¶ 49.

## II.  LEGAL STANDARD

The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  All underlying facts and inferences are analyzed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Where there are no disputed facts and review is based solely on the administrative record, summary judgment is appropriate for the party entitled to judgment as a matter of law.  *Young v. Gen. Servs. Admin.*, 99 F. Supp. 2d 59, 65 (D.D.C.), *aff'd*, 11 F. App'x 3 (D.C. Cir. 2000).

In this case, the Court is asked to review the judgment of an administrative tribunal, the Armed Services Board of Contract Appeals.  Although the ASBCA has statutory jurisdiction to

resolve certain disputes involving government contracts, *see* 41 U.S.C. § 607, the ASBCA's jurisdiction in this case is governed by the parties' contractual agreement to have disputes resolved by the ASBCA. The scope of the ASBCA's jurisdiction to resolve contractual disputes is essentially a question of contract interpretation. *See Breda Transp., Inc. v. Wash. Metropolitan Area Transit Auth.*, 164 F. Supp. 2d 677, 679-80 (D. Md. 2001) (finding that the scope of the ASBCA's jurisdiction is "essentially a question of contract interpretation"). The Disputes clause, Article 6 of the General Provisions of the Contract, provides as follows:

> a. Except as otherwise provided in this Contract, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Board of Directors. The decision of the Authority Board of Directors *or its duly authorized representative for the determination of such appeals* shall be final and conclusive unless in proceedings initiated by either party for review of such decision in a court of competent jurisdiction, the court determines the decision to have been *fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.* . . .
>
> b. This DISPUTES article does not preclude consideration of questions of law in connection with decisions provided for in paragraph a. above. Nothing in this Contract, however, shall be construed as making final the decisions of the Board of Directors or its representative on a question of law.

*See* AR, vol. 4, tab 9 (Construction Contract 1E0023) at 4-5 (emphasis added); ASBCA Opinion at 22-23. The parties agree that the ASBCA is WMATA's duly authorized representative for the determination of contract appeals. Therefore, pursuant to the parties' agreement, the ASBCA's decision regarding questions of fact is final and conclusive unless it is found by a court of

competent jurisdiction[5] to be "fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." The ASBCA's decisions on questions of law are not final and therefore may be reviewed de novo by this Court.

Because the Disputes clause essentially incorporates the standard of review set forth in the Wunderlich Act, 41 U.S.C. § 321, courts in this jurisdiction have relied on Federal Claims Court cases interpreting the Wunderlich Act for guidance. *See Granite-Groves v. Wash. Metro. Area Transit Auth.*, 845 F.2d 330, 333 (D.C. Cir. 1988); *Expressway Constr., Inc. v. Wash. Metro. Area Transit Auth.*, 676 F. Supp. 16, 17-18 (D.D.C. 1987) (citing cases). Under Wunderlich Act review standards, "the scope of judicial review is narrow, and is limited to whether there was substantial evidence" to support the Board's conclusion. *Titan Pac. Constr. Corp. v. United States*, 17 Cl. Ct. 630, 634 (Cl. Ct. 1989), *aff'd*, 899 F.2d 1227 (Fed. Cir. 1990); *see also Koppers Co. v. United States*, 405 F.2d 554, 558 (Ct. Cl. 1968). Substantial evidence is "evidence which could convince an unprejudiced mind." *Titan*, 17 Cl. Ct. at 634. In cases of conflicting evidence that could reasonably be resolved in favor of either party, the administrative tribunal's decision will not be overturned. *Id.* The Court will defer to reasonable inferences drawn from the evidence by the administrative tribunal, and will accept the tribunal's preference in cases of conflicting testimony. *Id.* The Court's review is limited to the administrative record. *Nello L. Teer Co. v. Wash. Metro. Area Transit Auth.*, 695 F. Supp. 583, 589 (D.D.C. 1988). On questions of law, the ASBCA's interpretation is not binding but nevertheless "is entitled to careful consideration and accorded due respect in recognition of its special expertise." *Titan*, 17

---

[5] This Court has original jurisdiction over all actions brought by or against WMATA. *See* D.C. Code § 9-1107.10.

Cl. Ct. at 635; *Granite-Groves*, 845 F.2d at 334 ("[W]here the Board's interpretation of a contract is reasonable and based on the Board's expertise, its determination, while not binding, will be given careful consideration and accorded great respect.")

## III. DISCUSSION

The parties have filed cross-motions for summary judgment seeking to affirm and/or reverse the judgment of the ASBCA. WMATA contends that the ASBCA erred by failing to dismiss Kiska's appeals under the doctrines of *res judicata* and collateral estoppel and erred by finding in favor of Kiska with respect to its claim for an equitable adjustment for PCO No. 45.[6] Kiska contends that the ASBCA erred denying its request for its retainage and for an equitable adjustment for PCO No. 56. The Court shall consider each of these contentions below.

### A. *Res Judicata*

WMATA argues that Kiska's claims for retainage and equitable adjustment are barred by the doctrine of the *res judicata* and that the ASBCA should have dismissed Kiska's appeals on that basis. The doctrine of *res judicata*, also known as claim preclusion, bars litigation of a claim where there has been prior litigation (1) involving the same claim or cause of action (2) between the same parties or their privies, (3) where there has been a final, valid judgment on the merits (4) by a court of competent jurisdiction. *Porter v. Shah*, 606 F.3d 809, 813-14 (D.C. Cir. 2010). The doctrine bars relitigation of both claims that were actually asserted in the prior litigation and

---

[6] Although WMATA argues that the ASBCA should have dismissed all of Kiska's claims under the doctrines of *res judicata* and collateral estoppel, WMATA does not dispute the Board's findings with respect to Kiska's entitlement to equitable adjustments for PCO No. 34 or Contract Modification Nos. 33 and 49. Because the Court finds that WMATA's arguments regarding *res judicata* and collateral estoppel are without merit, the Court shall affirm the ASBCA's award of equitable adjustments for PCO No. 34 and Contract Modification Nos. 33 and 49.

claims that *could* have been asserted. *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009). Courts have followed a transactional approach to defining a cause of action, generally "requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (citation omitted). The question, then, is whether the claims asserted by Kiska before the ASBCA could have been asserted in the First Federal Action.[7]

The ASBCA held that *res judicata* did not bar Kiska's claims because of the unique framework that governs the resolution of contract disputes in cases where the parties have agreed in a disputes clause to resolve certain disputes through an administrative tribunal. "The disputes clause is a standard feature of government contracts, and arguments concerning their scope an appropriate function are not novel." *Rohr Indus., Inc. v. Wash. Metro. Area Transit Auth.*, 720 F.2d 1319, 1322 (D.C. Cir. 1983). As the D.C. Circuit has explained the framework, "claims which are adjustable under contractual provisions must be submitted for the administrative determinations prescribed by the contract, while claims for breach of contract—those not adjustable in that fashion—may be litigated in a court of competent jurisdiction without previous resort to that procedure." *Bethlehem Steel Corp. v. Grace Line, Inc.*, 416 F.2d 1096, 1101 (D.C. Cir. 1969). Accordingly, the disputes clause requires administrative exhaustion of claims before they may be presented to a federal court. *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 512 (1967) ("It is now crystal clear that the contractor must seek the relief provided for

---

[7] The parties do not dispute that the First Federal Action involved the same parties, that there was a valid, final judgment, or that this Court had jurisdiction over the matter.

under the contract or be barred from any relief in the courts.") Although this framework no longer governs most government contracts following the passage of the Contract Disputes Act ("CDA"), the ASBCA's jurisdiction in this case was not based on the CDA.[8] Instead, the ASBCA's jurisdiction was based on the parties' agreement in the Disputes clause, and therefore the traditional framework applies. "[T]he test to be employed in distinguishing claims 'arising under' the contract, and therefore within the disputes clause procedure, from breach of contract claims outside that procedure is whether the controversy is fully redressable under a specific contract adjustment provision other than the disputes clause itself." *District of Columbia v. Savoy Constr. Co.*, 515 A.2d 698, 702 (D.C. 1986).

Kiska's claims for retainage and equitable adjustment clearly fall under the Disputes clause of the Contract. Therefore, the parties agreed to litigate those claims before the ASBCA subject to limited judicial review. As a result, Kiska was required to exhaust these claims administratively before it could seek relief from this Court in the First Federal Action. Indeed, WMATA recognized this distinction when it moved this Court to dismiss the First Federal Action as precluded by the parties' agreement under the Disputes clause to present their claims to the ASBCA. *See* ASBCA Opinion at 4 (FF ¶ 6) ("Prior to trial WMATA filed a motion to dismiss the suit, contending that [Kiska's] claims should not be before the court because they were disputes 'under' the contract for which the Disputes article of the contract provided an administrative remedy.") This Court ruled that the First Federal Action could proceed because it

---

[8] The Contract Disputes Act allows a contractor to appeal a contracting officer's decision in the U.S. Court of Federal Claims. *See* 41 U.S.C. § 609(a). The CDA generally applies to contracts entered into by executive agencies. *Id.* § 602(a). WMATA is not an executive agency within the meaning of the statute.

was styled as a breach of contract claim that was outside the scope of the Disputes clause. *See id.* If WMATA's view were to prevail, a party could render the disputes clause in a contract nugatory merely by filing a breach of contract action in federal court, since any claims "under" the contract would be part of the same transaction. Such a result is not consistent with the judicial policy behind the doctrine of *res judicata*. In light of the established dichotomy between claims arising under the Contract and those for breach of contract, the Court finds that Kiska could not have asserted its claims for retainage and equitable adjustment during the First Federal Action.

WMATA alternatively argues that *res judicata* should bar Kiska's appeals because the claims for retainage and equitable adjustment were in fact litigated during the First Federal Action, despite the requirement that such claims be presented first to the ASBCA. However, the Court is not persuaded that Kiska's breach of contract claim in the First Federal Action encompassed its claims for the retainage and for equitable adjustments. As explained more thoroughly below in the discussion of collateral estoppel, the fact that certain language in Kiska's complaint could be read expansively to cover those claims does not establish that those claims were actually litigated. Similarly, the inclusion of the retainage amount in the calculation of damages under the modified total cost method does not establish that a claim for the retainage was actually presented to the jury. At most, these facts establish that the costs sought by Kiska from the ASBCA could have been obtained in the alternative as damages for Kiska's breach of contract claim. Although the doctrine of *res judicata* would ordinarily preclude subsequent litigation of an alternative claim, the parties' agreement to submit disputes arising under the Contract to the ASBCA provides the basis for a different outcome here. Accordingly, the Court

finds no error in the ASBCA's failure to dismiss Kiska's appeals as *res judicata*.

    B.    *Collateral Estoppel*

WMATA argues that the doctrine of collateral estoppel precludes Kiska from litigating its claims before the ASBCA because those claims were litigated during the First Federal Action. "Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States. v. Mendoza*, 464 U.S. 154, 158 (1984). In order for an issue to be precluded under the doctrine, the issue must have been contested by the parties and submitted for judicial determination in the prior case. *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). Because the jury in the First Federal Action found that there was no breach of contract, WMATA argues that the jury also necessarily rejected Kiska's claims for the retainage and the equitable adjustments for pending change orders and contract modifications.

In support of its argument, WMATA points to the following facts: (1) in paragraph 185 of the complaint in the First Federal Action, Kiska alleged that WMATA failed to accept responsibility for additional costs and delays despite Kiska's requests for change orders and time extensions; (2) in paragraph 248(e) of the complaint, Kiska alleged that "WMATA directed that extra work beyond the scope of the Contract be performed and has failed and/or refused to pay for such extra work"; (3) and Kiska included the costs for the retainage, the change orders, and the contract modifications in its presentation of damages under the modified total cost method, which it argued to the jury at the end of the trial. For a variety of reasons, however, these facts are insufficient to establish that the jury's verdict in the First Federal Action necessarily decided

the issues that were presented to the ASBCA.

First, although the parts of the complaint cited by WMATA could be interpreted to encompass Kiska's claims for retainage and equitable adjustment, they need not be construed in that manner. There are no specific allegations in the complaint pertaining to the retainage or to the specific equitable adjustments at issue here. Moreover, as Kiska points out, the complaint in the First Federal Action was filed on November 10, 1997, but the parties continued to negotiate the pending change orders and contract modifications after that date, and WMATA's last payment to Kiska (in which the retainage of $650,000 was withheld) occurred in July 1998. Indeed, Modification No. 49 was issued by WMATA on February 18, 1998. *See* ASBCA Opinion at 20 (FF ¶ 54). Therefore, Kiska could not have intended to include all of its claims for relief in its complaint in the First Federal Action.

Second, WMATA has not shown that there was any evidence presented at the trial relating to the contract modifications or pending change orders at issue before the ASBCA. This undermines WMATA's expansive reading of Kiska's claim for "extra work" in the complaint as including these items. With respect to issue of retainage, Kiska's damages expert testified that the retainage was an accounting adjustment and that it was undisputed that it was owed to Kiska. The Board found that the record was unclear as to "what position, if any, WMATA took with respect to this testimony or on the issue of retainage in general." *See* ASBCA Opinion at 4 (FF ¶ 8). WMATA has not presented any evidence to challenge this finding by the Board. Therefore, it is unclear whether the retainage was actually a matter that was contested by WMATA during the First Federal Action. The doctrine of collateral estoppel precludes only those issues "actually litigated, that is, contested by the parties and submitted for determination by the court."

*Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983); *id.* (noting that the doctrine applies "only as to those matters in issue or points controverted" (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 353 (1877)).

Third, the testimony regarding the modified total cost method is distinct from testimony regarding the specific claims that Kiska presented to the ASBCA. As this Court explained in a ruling in the First Federal Action, the modified total cost method is a way to estimate the damages for breach of contract by taking the total cost incurred in performing the contract minus the contractor's bid price and excluding any costs for which the contractor is itself responsible. *See* AR, vol. 3, tab 28 at 12-13 (Mem. Op., Nov. 1, 2000). Kiska's expert testified that this method was being used despite its inherent limitations because there was no other reasonable way to calculate the damages from WMATA's alleged breaches of the Contract. Therefore, although the testimony regarding the modified total cost method may have included some of the same amounts that were later disputed before the ASBCA, they were only included as a means of estimating the total damages to Kiska for its breach of contract claim. The fact that Kiska might have recovered damages for these amounts under its alternative breach of contract theory does not establish that its claims for retainage and equitable adjustment were actually before the jury.

Fourth, WMATA concedes that the Court provided no instructions to the jury regarding a claim for the wrongful withholding of retainage or WMATA's failure to pay equitable adjustments. *See* Pl.'s Stmt. ¶ 5; Def.'s Resp. Stmt. ¶ 5. Therefore, these issues can only have been decided as part of the breach of contract claim submitted to the jury. The Court instructed the jury that it could find a breach based on WMATA's failure to provide accurate design plans and specifications, WMATA's failure to disclose vital information, or WMATA's acting in bad

faith or interfering with Kiska's performance of the Contract.  If the jury was to have decided

Kiska's claims for the retainage or the equitable adjustments, it can only have done so in finding

that WMATA breached its duty of good faith and fair dealing.  However, as the ASBCA noted in

its opinion, the Court instructed the jury that it could only return a verdict for Kiska if it found *by

clear and convincing evidence* that WMATA acted with specific intent to injure Kiska or took

actions that were motivated by malice or ill-will or were intentionally oppressive.  Therefore, the

jury could have concluded that WMATA improperly withheld the retainage or denied payment to

Kiska but that there was not clear and convincing evidence that they did so in bad faith.

Consequently, WMATA has failed to show that the jury's verdict in favor of WMATA

necessarily decided Kiska's claims for the retainage and equitable adjustments.

The ASBCA concluded that the doctrine of collateral estoppel did not preclude Kiska's

claims because WMATA failed to show that the issues before it were actually litigated,

submitted to the jury, or necessarily decided by the judgment in the First Federal Action.  For the

reasons explained above, the Court finds no error with the Board's refusal to dismiss Kiska's

appeals under the doctrine of collateral estoppel.

C.      *Claim for Retainage*

Kiska contends that the Board's denial of its claim for the retainage is arbitrary and

capricious, not supported by substantial evidence, and erroneous as a matter of law.  Under the

terms of the Contract, Kiska was entitled to payment of the retainage "[u]pon completion and

acceptance of all work" and "upon the presentation of a properly executed voucher . . . ."  The

Board found that Kiska had failed to prove that it had completed all of the work under the

Contract and present a voucher for payment.  Kiska argues that the evidence before the Board

29

clearly shows that it had completed all of the work by July 1998 and that presentation of a voucher would have been futile. The Court shall determine whether the Board's findings are supported by substantial evidence.

The Board found, and the parties do not dispute, that following "substantial completion" of the project on May 22, 1997, there were items on the punch list that were left to be completed. The "Substantial Completion" certificate indicated that the punch list items would be completed by October 20, 1997, but the Board found that the punch list items were not completed as of that date, citing minutes from project closeout meetings in December 1997, January 1998, and April 1998. The Board relied on testimony from Kiska's program manager, Mr. Price, that there were work items on the punch list that could not be completed and that negotiations to complete them stopped. The Board also noted that there was no final completion certificate in the record, and Kiska was not able to quantify the amount of punch list work that remained to be completed. Based on that evidence, the Board found that Kiska had not met its burden of proof with respect to the completion of all work under the Contract.

In attacking the Board's conclusion, Kiska points to the fact that Mr. Price, the program manager who testified that some of the punch list work could not be finished, left in early 1998 before the project was completed. Kiska also points to the fact that Progress Payment No. 039 was signed by Mr. Price's replacement, Mr. Aydin, who did not testify that any work remained to be performed on the Contract. Kiska asks the Court to take judicial notice of the fact that Kiska's contract work has been in use by WMATA for years. Kiska also argues its work must have been completed because WMATA never pleaded an affirmative defense that the work of the project remained incomplete and never sought damages for the costs of incomplete work in a

counterclaim.  *See* Pl.'s Mem. at 16.

Kiska has identified evidence in the record that might support a finding that all of the work required by the Contract was completed by Kiska.  However, Kiska's evidence does not compel that conclusion.  If anything, Kiska's arguments demonstrate that the record is unclear as to whether Kiska ever completed all the work on the punch list.  Indeed, Kiska concedes in its reply brief that "there is <u>nothing in the record</u> to indicate what punch list work remained as of June or July, 1998."  Pl.'s Reply at 18.  Kiska attempts to shift the burden to WMATA to come forward with evidence that the punch list work was not completed by arguing that WMATA never raised this as an "affirmative defense."  But Kiska bears the burden of proof on its claim that WMATA improperly withheld the retainage; WMATA's argument that the work was never completed by Kiska is simply a defense on the merits, not an affirmative defense for which it bears the burden of proof.  Since the completion of "all work" under the Contract is a prerequisite to the payment of the retainage, Kiska's failure to prove that all the work was completed means it failed to meet its burden of proof before the Board.  Therefore, the Court finds no error in the Board's denial of Kiska's claim for retainage.  In light of this finding, there is no need to address Kiska's claim that the presentation of a properly executed voucher for payment would have been a futile act.

D.      *Removal of Streetcar Tracks (PCO No. 45)*

WMATA contends that the Board erred in awarding an equitable adjustment to Kiska for the removal of streetcar tracks in excess of the quantity estimated by the Contract.  Specifically, WMATA contends that the Board erred in relying on the parties' "Agreement of Final Quantity" as proof that Kiska removed 4907.7 feet of streetcar tracks because Mr. Cummings, the Resident

Engineer who signed the document on behalf of WMATA, lacked authority to enter into such a

binding agreement. *See* Defs.' Mem. at 26-28. WMATA also contends that "Kiska failed to

offer any additional evidence to support the alleged overrun on the estimated quantity of street

car tracks." *Id.* at 26. Notwithstanding this conclusory assertion, WMATA does not dispute the

Board's other factual findings regarding PCO No. 45—that the Contract requires an equitable

adjustment when the actual quantity varies by more than 15% above the estimated quantity, that

WMATA apparently made an error in estimating the quantity of streetcar tracks to be removed,

that Kiska removed substantially more streetcar tracks than the estimated quantity, and that PCO

No. 45 was intended to compensate Kiska for the quantity overrun. Therefore, the only disputed

issue is the precise quantity of streetcar tracks removed by Kiska.

There are only two items in the administrative record that provide some indication as to

the amount of streetcar tracks actually removed by Kiska. The first is the minutes from the July

23, 1997 meeting at which PCO No. 45 was discussed, which stated that the actual quantity

removed by the contractor (Kiska) was 4351 linear feet. The second item is the "Agreement of

Final Quantity" document signed by Mr. Cummings on May 14, 1998, which states that the

parties agree that the final quantity of streetcar tracks removed is 4907.7 linear feet. Using either

figure, Kiska is clearly entitled to an equitable adjustment under the Contract for the excess

quantity removed. The Board chose the latter, finding that Mr. Cummings did have authority to

sign that document based on his authority to certify quantities of work performed for progress

payment purposes. WMATA argues that Mr. Cummings's authority was limited to making

recommendations to the Contracting Officer. Even if WMATA is correct, however, the Board

could have justifiably relied on the "Agreement of Final Quantity" as evidence that Kiska had

actually removed 4907.7 linear feet of streetcar tracks.  WMATA is bound by the Contract to pay

Kiska for the overrun regardless of whether an authorized representative signed a binding

agreement as to the quantity overran.  The fact that Mr. Cummings might not have been

authorized to sign the agreement on behalf of WMATA does not diminish the fact that the

agreement is an acknowledgment by WMATA's resident engineer that the quantity of streetcar

tracks removed by Kiska was 4907.7 linear feet.  That agreement, combined with the other

evidence in the record, provides substantial evidence to support the ASBCA's award of an

equitable adjustment.  Moreover, WMATA did not present any evidence to the Board suggesting

that the figure of 4907.7 linear feet was incorrect.  Therefore, the Court finds no error in the

ASBCA's decision to award Kiska $192,005.10 for PCO No. 45.

     *E.     Tunnel Safety Walk (PCO No. 56)*

Kiska contends that the ASBCA erred by failing to award an equitable adjustment for its

tunnel safety walk claim.  The Board found that Kiska had not proven that the tunnel safety walk

was not required by the Contract or that WMATA had agreed to pay Kiska for the tunnel safety

walk.  Kiska does not argue that the Board erred in its first finding but claims that the Board

wrongly concluded that WMATA did not agree to pay for the tunnel safety walk through PCO

No. 56.

Kiska argues that the evidence before the Board clearly demonstrates that WMATA had

issued PCO No. 56 to Kiska, acknowledging that the tunnel safety work was extra work not

required by the Contract.  However, the record before the ASBCA is not so clear.  Although PCO

No. 56 is referenced in the agenda items and minutes for several closeout meetings, there is no

copy of either PCO No. 56 or a contract modification for the tunnel safety walk in the record.

WMATA's resident engineer testified that the parties had negotiations over the tunnel safety walk claim but that Kiska did not accept WMATA's offer of $77,000. Kiska has not pointed to any evidence in the record showing that the parties ever reached a final agreement as to this issue. Therefore, the Court finds that the Board's finding that WMATA never entered a binding agreement to pay Kiska for the tunnel safety walk claim is supported by substantial evidence.

Kiska argues that the Contracting Officer and his staff decided that the general language of the OSHA regulations did not require a temporary walkway safety railing, which is why they began negotiations with Kiska over the amount of the claim. However, it is not clear from the record that WMATA ever conceded liability with respect to Kiska's claim. Although the Board might have drawn that conclusion from the record before it, the opposite conclusion—that WMATA continued to dispute Kiska's claim that OSHA regulations did not require a safety walkway—can also be drawn from the record. Under the standard of review applicable to this case, the Court cannot set aside the Board's choice between two plausible interpretations of the record. The fact that WMATA negotiated with Kiska in an effort to resolve the claim—making an offer that was substantially less than Kiska's demand of $247,392—does not establish that WMATA agreed that the tunnel safety walk was extra work under the Contract. In fact, it is contrary to judicial policy to assume a party's liability based on their willingness to settle a claim. *See, e.g.*, Fed. R. Evid. 408 (excluding evidence of settlement offers to prove liability). Therefore, the Board did not err in finding that WMATA had not conceded Kiska's entitlement to an equitable adjustment.

Kiska also argues that the Board's finding with respect to PCO No. 56 is inconsistent with its award of equitable adjustments based on PCO Nos. 34 and 45. However, WMATA did

not dispute that Kiska performed extra work relating to the subject matter of PCO Nos. 34 and 45, and the Board's award of equitable adjustments for those PCOs was not based solely on WMATA's issuance of a PCO. Accordingly, there is no inconsistency in the Board's rulings. The Board was justified in concluding that the issuance of PCO No. 56 did not excuse Kiska's burden to prove that the tunnel safety work was extra work under the Contract.

## IV. CONCLUSION

For the foregoing reasons, the Court shall affirm the ASBCA's decision with respect to all of the issues contested by the parties. The Court shall GRANT-IN-PART Plaintiff's [12] Motion for Summary Judgment with respect to confirmation of the ASBCA's award of $320,848.10 to Plaintiff and DENY-IN-PART Plaintiff's motion with respect to ASBCA's denials of its claim for retainage in the amount of $650,000 and its claim for $247,392 for the cost of installing the temporary tunnel safety walkway. The Court shall GRANT-IN-PART Defendant's [14] Cross Motion for Summary Judgment with respect to the ASBCA's denial of Plaintiff's claims for retainage in the amount of $650,000, grouting weep holes in the tunnel in the amount of $5920, additional pedestrian railings in the amount of $5839, and temporary tunnel safety walkway in the amount of $247,392 and DENY-IN-PART Defendant's motion with respect to its argument that the ASBCA should have dismissed Plaintiff's claims as barred by the doctrines of *res judicata* and collateral estoppel. An appropriate Order accompanies this Memorandum Opinion.


　　　　　　　　　　　　　　*/s/*
　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　United States District Judge